(44 South. 338.)

No. 16,564.

STATE v. COLEMAN.

(June 17, 1907. Rehearing Denied June 28, 1907.)

1. HOMICIDE — EVIDENCE — THREATS BY DECEASED.

Where, on the trial of a person charged with murder, the evidence showed that before and at the time accused fired the shot which killed the deceased the latter had made no hostile demonstration nor committed any overt act against the accused, evidence is inadmissible on the part of the defense to establish that the deceased had made threats against the accused which had been communicated to the latter, and that the deceased was a violent and quarrelsome and dangerous man. Had the deceased in fact made such threats, and had he been a violent, quarrelsome, and dangerous man, those facts of themselves would not have justified the accused in shooting him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 399–402.]

2. SAME—CHARACTER OF DECEASED.

This being true, the trial court properly refused to allow questions to be asked and answered as to the character of the deceased, and as to his having made threats as ascribed to him, and to have such questions and answers taken in writing, to be made part of the record. No useful purposes would have been subserved thereby.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 391–397.]

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Lee Coleman was convicted of murder, and appeals. Affirmed.

Sompeyrac & Toomer, Edwin F. Gayle, and Winston Overton, for appellant. Walter Guion, Atty. Gen., and Leland Hugh Moss, Dist. Atty. (James Alexander Williams and Lewis Guion, of counsel), for the State.

NICHOLLS, J. The defendant, Lee Coleman, was convicted on the charge of murder, and sentenced to death in the parish of Calcasieu. He now prosecutes an appeal from the judgment of the district court, and asks for a reversal of the verdict and judgment against him.

He relies upon certain bills of exception copied in the record, which he groups under three headings. The first group relates to the right of the defendant to prove the reputation of the deceased. These objections are contained in bills of exception Nos. 3, 4, 5, and 6.

The second group relates to the right of the accused to prove threats made by the deceased against him to rebut the presumption of malice. These objections are contained in bills of exception Nos. 3, 4, and 5.

The third group relates to the right of the accused to prove threats under the evidence of overt act made by the deceased. These objections are contained in bills of exception Nos. 7 and 8.

In bill of exception No. 3 it is recited that Oscar Lyons, being upon the stand, was asked:

"Mr. Lyons, did you ever have a conversation with Shoemake with reference to Coleman, and, if so, do you remember the substance of it"?

To which he replied:

"Yes."
"Please state the substance of it."

Which latter question was objected to by the state, for the reason that evidence to prove previous threats is not admissible; no overt act having been shown or hostile demonstration of deceased towards the accused, and the purpose of the question being evi-

dently to introduce such evidence. Whereupon counsel for defendant stated that the purpose of the evidence is to rebut any presumption of malice by reason of the introduction of the evidence on the part of the state to show a previous difficulty between the accused and deceased, which objection was sustained by the court for the following reasons:

Because the introduction of threats by the deceased against the accused was inadmissible, no foundation having been laid for such evidence, and the purpose stated could or would not have rebutted the presumption of malice under the circumstances of the killing.

Bill of exception No. 4 is substantially the same as bill No. 3, except that it differs in the name of the witness on the stand to whom the questions were propounded.

Bill of exception No. 5 recites that the defendant, having placed upon the stand Doc Lyons, George Adams, Oscar Lyons, and Joe Walker, moved to complete the record; that said named witnesses be permitted to answer the questions propounded to them shown in bills of exception Nos. 3 and 4, in order to show injury to the Supreme Court by reason of the ruling of the lower court and for the purpose of making their evidence a part of the bill of exception, which motion was refused for the following reason:

"Because this would have been a useless consumption of time. The testimony of Rainwater and Hennegan hereto attached by counsel of defendant is no part of this bill of exceptions, nor any other. On the request of counsel of accused that the stenographer take their testimony down, the court objected. Whereupon Mr. Sompeyrac, attorney for the accused, said he would have it taken at his own expense and for his private benefit, and the stenographer was then permitted to take it down.

"Whereupon defendant excepted, and attached minutes of evidence and makes same a part hereof; showing motion and ruling of the court and the evidence introduced by the state and elicited from the state's witnesses, J. A. Rainwater and Gilbert Hennegan, showing said previous quarrels, all of which has been submitted to the district attorney before being signed by the judge."

Bill of exception No. 6 recites that witness Doc Lyons, being upon the stand, was asked by counsel for defendant:

"Mr. Lyons, were you acquainted with the general reputation of the deceased, Shoemake, bore in the community in which he lived for being a quiet peaceable man or a dangerous and quarrelsome man?"

Counsel for defendant stated that the purpose was to introduce testimony to rebut evidence introduced by the state elicited from witnesses Rainwater and Hennegan shown on minutes of evidence attached to bill of exception No. 5, which testimony was introduced on the part of the state to show that Shoemake was a quiet and peaceable man, and the testimony of said witnesses Rainwater and Hennegan having for its purpose to raise the presumption by their recitals of Shoemake having stood mute when Coleman had cursed him. Their testimony was offered for the further purpose of rebutting the presumption that the state sought to raise when she threw open the character of the deceased by introducing evidence of his commission as deputy sheriff or peace officer. The object of defendant to rebut any presumption of Shoemake being a law-abiding and peaceable officer, to which the state objected for the reason that no foundation had been laid for the introduction of such evidence, and for the further reason that the evidence introduced by the state was not for the purpose indicated, nor could it be so interpreted. To which objection on the part of the state the court sustained for the following reasons:

"Because it makes no difference how bad a man may be, another is not authorized to walk up to him and shoot him down in cold blood. The fact that Shoemake is said to have remained mute at a prior difficulty when Coleman cursed and called him vile names proves neither good nor bad reputation on the part of Shoemake for peace and quiet. It did show, though, that he was a man of discretion, and could appreciate a perilous situation. While Coleman did the cursing, he kept his hand on his gun pocket, and his companion Duke kept his hand on his bosom in touch with his inside coat pocket. The facts were that Shoemake was a

deputy marshal of the village of De Quincey, and also deputy sheriff of Calcasieu, and would try to maintain peace and order in that village. The defense on the cross-examination of the state's witnesses had elicited the fact that a pistol was found on the body of Shoemake when it was taken up, and the state, by the introduction of the commission of Shoemake as deputy sheriff, was only trying to show that he was a peace officer, and had a right to carry a weapon. Besides this, evidence had gone to the jury to show that he was such a deputy, as well as deputy marshal. As I have stated in bill of exceptions No. 8, Shoemake was shot down at a moment when he was not expecting any trouble, as his conduct on the occasion shows, and he was not then doing anything to lead the accused to believe that his life or person was in danger, but that the shooting was deliberate and premeditated. There is no doubt in my mind that the deceased had made no hostile demonstration, nor committed any overt act. Coleman on the night of the prior difficulty was said to have discharged a pistol in the corporate limits of the village of De Quincey at a late hour, and it was the investigation of that shooting by Shoemake which provoked Coleman to curse him, as testified to by both Rainwater and Hennegan. That act culminated in Coleman's being indicted October 20th for both hoodlumism and the carrying of a concealed weapon, with Shoemake as the principal witness for the state. He was arraigned October 25th, and the cases were on that day fixed for the Saturday, the 3d day of November, and Shoemake was killed the Saturday night preceding. Coleman had also been put under a peace bond on account of his conduct towards Shoemake. I will here state that this matter of peace bond and the indictment of Coleman, etc., as above referred to, are dehors this record, but I feel that this court should apprise the appellate court of facts which cannot be disputed and are mentioned here to show that Shoemake was law abiding and not seeking to avenge himself. He had resorted to the law, and was letting it take its course. The village of De Quincey unfortunately has acquired an unenviable reputation, and Shoemake had made enemies there by an effort to enforce the law and maintain good order. Coleman himself, while upon the witness stand in his own behalf, testified before the jury, among other things, that he (Shoemake) would go into his (Coleman's) place of business (a saloon), and make arrests of his customers without being called upon to do so, and that such actions on the part of Shoemake had become unbearable to him (Coleman), and that he had forbidden Shoemake repeating his acts. Besides, it was not the state who had introduced evidence to the effect that Shoemake had stood mute when Coleman cursed him, but Coleman himself."

To which ruling of the court defendant excepted, and asked to be permitted to take the answer of the witness as a minute of

119 LA.—22

evidence in order to complete the record, and, if desired by the district attorney and court, that the jury be retired while the witness answered, which motion was refused by the court.

Whereupon defendant only excepted, and thereupon offered the following witnesses for the purpose of propounding to them the same questions for the purpose of having their testimony taken to complete the record. Its witnesses were named Joe Mullen, Oscar Lyons, Joe McNichols, George Adams, Dave Lyons, and Joe Courteney. To which the state makes the objection as previously urged. Which objection was sustained by the court, and the defendant thereupon reserved a bill of exception, and now presents it.

This bill was taken to the refusal of the trial judge to allow the witness Doc Lyons to answer a question propounded by defendant to him, which was objected to by the state on the ground that the foundation of proof of threats had not been laid, no overt act having been established, and no hostile demonstration has been shown by the deceased towards the accused; the clear purpose of the question being to introduce evidence of that character.

The objection was sustained by the court, after testimony had been introduced by both the state and the defense—that of the latter to show that an overt act had been committed and hostile demonstration had been made by the deceased, that of the state to show the contrary. The jury was retired pending the taking of this evidence. The ground assigned by the trial judge for his ruling was because no overt act or hostile demonstration was shown which is a condition precedent to the introduction of threats under the established jurisprudence of this state. The evidence is conclusive that the deceased was a spectator, sitting near a card table, with his side to it, and at the time of the shooting was facing Mr. Coffee, dealer, with whom he was joking, and that the accused Coleman walked up to

the opposite side of the table, which placed him in a position facing the right side of the deceased. The six witnesses, viz., John Sullivan, John Nyland, Barnes Perkins, Charles Hollander, Wesley Franklin, and John Crawford, impress me with the truthfulness of their statements on the stand, and I have no doubt that Shoemake, the deceased, was sitting near the table (facing Coffee, the dealer), resting his face on one or both of his hands, when the accused walked upon the opposite side of the table and commenced shooting at him. It will be observed that the accused was the only one who testifies that the deceased made a motion as if to reach for a gun.

Attached to this bill was the testimony referred to.. The judge in his addendum to the bill stated that from the evidence before the jury he was fully in accord with its verdict.

Bill of exception was reserved to the ruling of the trial judge to allow certain question propounded to the witness Doc Lyons to be answered on objections made by the district attorney. The objection so made was that it was an attempt to prove threats without establishing a hostile demonstration or overt act. The objection · was sustained on the same ' ground and under the same circumstances that the answer. to the question propounded as shown in bill of exception No. 7 was disallowed.

The question submitted to us for decision is whether or not the court erred in refusing, as it did, to allow the defendant to introduce evidence to show the general reputation of the deceased, William Shoemake, as being a quiet, peaceable man, or a dangerous and quarrelsome one, and in refusing to allow the defendant to introduce evidence to show that the deceased had made threats against the accused, which threats had been communicated to him.

The refusal of the court was based upon the conclusion reached by it, that deceased,

before the accused fired the fatal shot at him, had made no hostile demonstration against him, and had committed no overt act against him whatever.

· The evidence taken on the part of the state, also that on the part of the defense on those subjects, is in the record. We have read it with care, and are satisfied that the conclusions reached by the court are those which, under the evidence, should have been reached.

If the deceased before, and at the time the accused fired the shots which killed him, had made no hostile demonstration against the accused, and had committed no overt act whatever against him, the accused was totally without right to shoot him, because of his having had communicated to him the fact that the deceased had made threats against him. The apprehension or fear of the accused that the deceased might carry those threats into execution because he had the general reputation of being a violent, quarrelsome, and dangerous man gave the accused no right whatever to shoot the deceased when the latter had made no hostile demonstration against him and had committed no overt act. The truth of these propositions cannot be disputed.

Being true, then evidence to prove the quarrelsome or violent character of the deceased, or that he had made threats against the accused which had been communicated to him, were clearly inadmissible under such conditions, for, had the facts themselves which this evidence was seeking to establish been beyond question established, they would have furnished no ground for defense. We have no reason to know or to believe that these facts were true.

Appellant complains that the court erred in refusing to allow him to have the questions he propounded to different witnesses as to the general reputation of the deceased for peace and quiet answered and the answers to be placed in the record. If the testimony sought to be elicited under the questions

was inadmissible, as we hold that it was, it would have been utterly useless to have permitted answers to have been given to those questions and to have placed those answers in the transcript, for the answers, if permitted and if transcribed, would have served no purpose whatever.

We find no ground for reversal in this case, and the judgment is hereby affirmed.